**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **SMITH VIL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **Civil Action No. 11-cv-11622-DJC** |
| **JACKY POTEAU F/K/A** | ) |
| **JACQUES POTEAU,** | ) |
| **FOUNDATION FOR THE** | ) |
| **TECHNOLOGICAL AND ECONOMIC** | ) |
| **ADVANCEMENT OF** | ) |
| **MIREBALAIS, INC.,** | ) |
| **RICARDO BONACY TELEMAQUE** | ) |
| **F/K/A BEAUDELAIRE** | ) |
| **TELEMAQUE,** | ) |
| **JOHN ERICK NOEL, and** | ) |
| **GABRIELLE RENE,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**MEMORANDUM AND ORDER**

**Casper, J.**                                                                  **July 26, 2013**

**I.      Introduction**

Plaintiff Smith Vil ("Vil" or the "Plaintiff") filed an amended complaint against Jacky

Poteau f/k/a Jacques Poteau ("Poteau"), Ricardo Bonachy Telemaque f/k/a Beaudelaire

Telemaque ("Telemaque"), John Erick Noel, Gabrielle Rene (collectively, the "Individual

Defendants") and the Foundation for the Technological and Economic Advancement of

Mirebalais, Inc. ("FATEM") (together with the Individual Defendants, the "Defendants")

asserting claims for copyright infringement, unfair competition, breach of an implied contract,

declaratory judgment and equitable relief.  Poteau has filed a counterclaim against Vil seeking a permanent injunction as well as monetary sanctions.

Before this Court are three separate motions to dismiss:  the Defendants have filed a motion to dismiss Vil's amended complaint, Poteau has separately filed a motion to dismiss the claims against him and Vil has filed a motion to dismiss Poteau's counterclaim.  For the reasons set forth below, the Court DENIES the Defendants' motion to dismiss, GRANTS Poteau's motion to dismiss and DENIES Vil's motion to dismiss Poteau's counterclaim.

## II.	Burden of Proof and Standard of Review

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss a complaint is appropriate where the Plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, the complaint must make sufficient factual allegations "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Facial plausibility requires the facts in the complaint to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and that relief is "more than a sheer possibility." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  In cases where the plaintiff is a pro se litigant, the complaint must "be liberally construed [and] however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted).  At the motion to dismiss stage, all well-pled facts in the complaint are entitled to an assumption of veracity and all reasonable inferences must be drawn in the Plaintiff's favor. Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007).

### III.    Factual Background[1]

In 2006, Vil founded the non-profit organization FATEM and served as its Vice President and a member of its board of directors.  Am Compl. ¶ 9.  Poteau is President and Executive Director of FATEM.  Id. ¶ 3.  Telemaque is an Associate Executive Director of FATEM.  Id. ¶ 4. All of the Individual Defendants serve on FATEM's board of directors.  Id. ¶¶ 3–6.

In 2007, Vil "created" a "learning program" called "Learn to Read and Write is a Right" (the "Program").  Id. ¶ 10.  He "secured the exclusive rights and privileges for his creative works" and received a copyright for his "creative works" from the Register of Copyrights which bore the registration number TXu 1-703-966.[2]  Id. ¶ 18.

Vil alleges that in 2009, Poteau, along with the other Individual Defendants, secretly acted to remove him from FATEM's operations.  Id. ¶ 11.  However, the Defendants, without authorization, continued to reproduce, display, advertise and distribute Vil's "owned and copyrighted works."  Id. ¶ 15.  The Defendants also "continued to use [Vil's] creative works to attract donors," including Zynga, which contributed over a million dollars to the Program.  Id. ¶¶ 11–12.  As a result of donations, FATEM grew from a budget of less than $30,000 to having over $2 million in assets.  Id. ¶ 12.

### IV.    Procedural History

On September 21, 2011, Vil filed a complaint in this Court against the Defendants.  D. 1. On November 28, 2012, the Court dismissed certain claims in that complaint and granted Vil leave to amend his intellectual property claims.  D. 25.  On January 9, 2013, Vil filed an

---

[1] Unless otherwise noted, the following factual summary is based on the facts alleged in the amended complaint, D. 29.

[2] Although the amended complaint never explicitly states which of the Plaintiff's "creative works" are covered by the copyright, Vil's opposition to the Defendants' motion to dismiss indicates that he is referring to the Program.  See D. 39 at 4.

amended complaint against the Defendants, which asserts claims for copyright infringement pursuant to 17 U.S.C. §§ 101 et seq. (Count I), unfair competition in violation of 15 U.S.C. §§ 1117, 1125(a) (Count II), breach of an implied contract (Count III), declaratory relief (Count IV) and injunctive relief (Count V). Am. Compl., ¶¶ 17-36. On February 1, 2013, the Defendants collectively filed a motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6), D. 34, and Poteau individually filed a motion to dismiss the claims against him, D. 36.

On January 11, 2013, Poteau filed a counterclaim against Vil seeking injunctive relief and monetary sanctions. Countercl., D. 30. The counterclaim arises out of Poteau's voluntary Chapter 13 Petition filed on August 13, 2009 in the United States Bankruptcy Court for the District of Massachusetts. Id. ¶ 1. On May 29, 2012, Poteau converted his Chapter 13 case into a Chapter 7 case. Id. ¶ 2. As part of his bankruptcy proceeding, Poteau added Vil as an "unsecured creditor" for Vil's claims against him. Id. ¶ 3. On August 28, 2012, Poteau was granted a discharge order under § 727 of the Bankruptcy Code. Id. ¶ 7. On January 16, 2013, Vil moved to dismiss the counterclaim pursuant to Fed. R. Civ. P. 12(b)(6). D. 31.

## V.     The Defendants' Motion to Dismiss the Amended Complaint

### A.     Vil's Copyright Infringement Claim (Count I)

Vil alleges that he obtained a valid copyright granting him "the exclusive rights and privileges" in the Program. See Am. Compl. ¶ 18. Vil received a certificate of registration from the Register of Copyrights which bore the number "TXu 1-703-966." Id. Vil alleges that the Defendants committed copyright infringement because they "reproduced, displayed, advertized, pitched to donors, and distributed" the copyrighted materials without his consent. Id. ¶ 15. The Defendants have moved to dismiss the copyright infringement claim on two bases: (1) Vil's

copyright is not valid because the Program does not qualify as a "work of authorship" under 17 U.S.C. § 102 and (2) even if the copyright is valid, their use of the Program constituted "fair use" under 17 U.S.C. § 107.  D. 34.

### 1.    The Validity of Vil's Copyright

While "registration is not a condition of copyright protection," 17 U.S.C. § 408(a), "the Copyright Act makes registration a precondition to filing a valid copyright infringement claim under the federal statute," Airframe Sys., Inc. v. L-3 Commc'ns Corp., 658 F.3d 100, 105 (1st Cir. 2011).  In addition to the registration requirement, a plaintiff alleging copyright infringement must prove the following elements:  "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original."  Id. (quoting Situation Mgmt. Sys., Inc. v. ASP Consulting LLC, 560 F.3d 53, 58 (1st Cir. 2009)) (internal quotation marks omitted). Copyright ownership is shown by proof "that the work as a whole is original and that the plaintiff complied with applicable statutory formalities." CMM Cable Rep, Inc. v. Ocean Coast Props., Inc., 97 F.3d 1504, 1513 (1st Cir. 1996).  "[A] certificate of copyright registration constitutes prima facie evidence of copyrightability and shifts the burden to the defendant to demonstrate why the copyright is not valid." Lotus Dev., Inc. v. Borland Intern., Inc., 49 F.3d 807, 813 (1st Cir. 1995) (quoting Bibbero Sys., Inc. v. Colwell Sys., Inc., 893 F.2d 1104, 1106 (9th Cir. 1990)) (internal quotation mark omitted).

The Defendants argue that Vil's copyright is invalid because it does not satisfy the requirements of the Copyright Act, 17 U.S.C. § 102, because the Program is a "learning program" and does not qualify as a "work of authorship" under § 102, and instead falls under the § 102(b) exclusion that prohibits copyright protection for "any idea, procedure, process, system, method of operation, concept, principle or discovery." 17 U.S.C. § 102(b); D. 35 at 4–5.  The

Court, however, finds that Vil has pled sufficient facts to establish the facial plausibility of his claim.

A certificate of copyright registration creates a rebuttable presumption in favor of the validity of the copyright.  Lotus, 49 F.3d at 813.  Here, Vil has alleged that he possesses a certificate of copyright registration for the Program.  Am. Compl. ¶ 18.  Therefore, the presumption of validity applies to Vil's copyright, and it is the Defendants' burden to rebut.  The Defendants cite to Situation Management Systems v. ASP Consulting Group, 535 F. Supp. 2d 231, 238 (D. Mass. 2008), in support of their position that the Program is an "un-copyrightable" process.  D. 35 at 4.  They appear to rely upon a blanket rule that would exclude all "[w]orks that offer techniques for developing a skill or reaching a goal" from copyright eligibility.  Id.  This argument, however, was rejected by the First Circuit, which reversed the district court because it "improperly denied copyright protection to large portions of [the plaintiff's] works because it, in an error of law, found 'they focus on concepts and teach a noncopyrightable process.'"  Situation Mgmt., 560 F.3d at 61 (quoting Situation Mgmt., 535 F. Supp. 2d at 240).  The First Circuit held that although a process or system itself is not copyrightable, a description thereof may be.  Id. at 61–62 (holding that "[t]he fact that [the plaintiff's] works describe processes or systems does not make their expression noncopyrightable" and thus, the plaintiff's "creative choices in describing those processes and systems . . . are subject to copyright protection").  Accordingly, to the extent that the Program offers a description of a learning technique, it may be copyrightable under the Situation Management standard.  As a result, the Defendants have failed to rebut the presumption of validity.

2.    The "Fair Use" Defense

The Defendants next argue that even if Vil's copyright is valid, their use of the copyrighted material constituted "fair use" under 17 U.S.C. § 107.  D. 35 at 5–8.  Section 107 provides four factors to be considered in determining whether an alleged act of infringement constitutes fair use:  (1) "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes"; (2) "the nature of the copyrighted work"; (3) "the amount and substantiality of the portion used in relation to the copyrighted work as a whole"; and (4) "the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107.

"Fair use is a mixed question of law and fact," Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 560 (1985), and an affirmative defense for which the Defendants in this case bear the burden, see Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory, 689 F.3d 29, 59 (1st Cir. 2012).  An affirmative defense may be adjudicated on a motion to dismiss for failure to state a claim, however, (1) the "facts that establish the defense must be definitively ascertainable from the allegations of the complaint" or the limited scope of documents upon which a court may rely for deciding a motion to dismiss (e.g., documents incorporated into the complaint and matters of public record or judicial notice); and (2) such facts must "conclusively establish the affirmative defense."  In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003).  The fact-sensitive nature of the fair use defense has caused courts to be reluctant to allow it as grounds for dismissal at this early juncture in the litigation.  See Katz v. Chevaldina, 900 F. Supp. 2d 1314, 1316 (S.D. Fla. 2012) (noting the "general rule that fair use defenses are not ripe for determination before the summary judgment stage"); Sony BMG Music Entm't v. Tenenbaum, 672 F. Supp. 2d 217, 219 n.2 (D. Mass. 2009) (noting that "[a]lthough affirmative defenses may be raised in a motion to dismiss, defenses such as the fair use doctrine involve a

more detailed analysis of the facts at issue and are best resolved by summary judgment or adjudication at trial" (quoting E. Gluck Corp. v. Rothenhaus, 585 F. Supp. 2d 505, 514 (S.D.N.Y. 2008))); Browne v. McCain, 612 F. Supp. 2d 1125, 1130 (C.D. Cal. 2009) (explaining that "in light of a court's narrow inquiry at [the motion to dismiss] stage and limited access to all potentially relevant and material facts needed to undertake the [fair use] analysis, courts rarely analyze fair use on a 12(b)(6) motion").

a.       Purpose and Character of the Use

The Defendants contend that this factor favors a finding of fair use because the Program is being used for "non-profit educational purposes." D. 35 at 6. However, the Supreme Court has held that "the mere fact that a use is educational and not for profit does not insulate it from a finding of infringement." Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 584 (1994). "In effect, the commercial-noncommercial distinction the law draws centers not on whether a user intends to line his own pockets, but rather on 'whether the user stands to profit from exploitation of the copyrighted material without paying the customary price.'" Gregory, 689 F.3d at 61 (quoting Harper & Row, 471 U.S. at 562). Thus, "profit" is "not limited simply to dollars and coins; instead, it encompasses other non-monetary calculable benefits or advantages." Id. Here, Vil alleges that the Defendants did financially profit from the use of the Program by successfully soliciting donations without giving him "just compensation," "recognition" or "credit," Am. Compl. ¶¶ 12, 23, and thus benefited from using the Program.

The "commercial or nonprofit educational purpose of a work is only one element of the first factor enquiry into its purpose and character." Campbell, 510 U.S. at 584. The first factor analyzing the purpose and character of the use of the copyrighted material also requires the Court to assess "whether and to what extent the new work is 'transformative,' that is, 'whether the new

work merely supersedes the objects of the original creation' or whether it 'adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message.'"  Gregory, 689 F.3d at 59–60 (quoting Campbell, 510 U.S. at 579) (internal quotation marks omitted).  Here, Vil alleges that the Defendants' use is not transformative.  Vil created the Program, which was intended to educate and be "presented to donors to fund the organization." Am. Compl. ¶ 10.  Vil alleges that the Defendants used his Program as their own for these same purposes.  See id. ¶¶ 12 (alleging that the Program was "use[d] to obtain funds from a number of donors including Zynga, which contributed over a million dollars to the education program authored by [Vil]"), 13, 15.  "[W]here . . . [the defendant's] use is for the same intrinsic purpose as [the plaintiff's], . . .  such use seriously weakens a claimed fair use."  Weissmann v. Freeman, 868 F.2d 1313, 1324 (2d Cir. 1989); see also Gregory, 689 F.3d at 60–61.

For these reasons, this factor weighs against a finding of fair use.

b.      Nature of the Copyrighted Work

The second factor, the "nature of the copyrighted work," 17 U.S.C. § 107(2), requires the Court to consider:  (1) whether the Program is factual or creative; and (2) whether it has previously been published, Gregory, 689 F.3d at 61.  With respect to the first element, "[t]he scope of fair use is greater when 'informational' as opposed to more 'creative' works are involved."  Hustler Magazine Inc. v. Moral Majority Inc., 796 F.2d 1148, 1153–54 (9th Cir. 1986); see also Gregory, 689 F.3d at 62.  The only description of the Program in the amended complaint is that it is a "program geared to educate" and that Vil considered it to be "his creative work."  Am. Compl. ¶¶ 10, 13.  Thus, there are insufficient allegations in the amended complaint for the Court to determine whether the Program falls closer to the creative end of the copyright spectrum than the informational or factual end.  See Gregory, 689 F.3d at 62 (determining

whether the copyrighted works "reflected creativity, imagination, and originality in their language, structure, word choice, and overall textual translation").

The second element is intended to ascertain the copyright holder's exercise of control over the material and its overall availability to the public.  See Harper & Row, 471 U.S. at 564 (discussing the creator's "right to control the first public appearance of his expression").  "Where a defendant has usurped an author's right to decide whether previously unpublished material should be made public, that weighs against fair use."  Fitzgerald v. CBS Broad., Inc., 491 F. Supp. 2d 177, 187 (D. Mass. 2007); see also Harper & Row, 471 U.S. at 564 (noting that "the scope of fair use is narrower with respect to unpublished works").  Here, Vil alleges that the Program was intended to be presented to donors to fund FATEM and concedes that the Program was published on FATEM's website soon after its creation.  Am. Compl. ¶ 10; D. 39 at 4. However, because there is insufficient information in the amended complaint for the Court to determine whether the Program is factual or creative, it is premature for the Court to determine whether this factor supports a finding of fair use.

c.      Amount and Substantiality of the Use

The third factor requires the Court to consider "the amount and substantiality of the portion used in relation to the copyrighted work as a whole."  17 U.S.C. § 107(3).  "While 'wholesale copying does not preclude fair use per se,' copying an entire work 'militates against a finding of fair use.'"  Worldwide Church of God v. Phila. Church of God, Inc., 227 F.3d 1110, 1118 (9th Cir. 2000) (quoting Hustler Magazine, 796 F.2d at 1155).  However, the Court's inquiry is "not affixed by cold calculations of the percentage of a work used versus unused." Gregory, 689 F.3d at 62.  Courts also consider the "qualitative nature of the taking," Harper & Row, 471 U.S. at 565, and whether the use is reasonable in relation to the purpose of the

copying, <u>Campbell</u>, 510 U.S. at 586–87 (noting that "the extent of permissible copying varies with the purpose and character of the use").

The Defendants correctly point out that the "Plaintiff fails to make any specific allegations or identify the portions of the 'Learn to Read and Write is a Right' program that were used by the Defendants." D. 35 at 7. Vil simply alleges that the Defendants used the Program. <u>See</u> Am. Compl. ¶ 11. Thus, there is insufficient information for the Court to determine the extent of the Defendants' use.

d.      Effect on the Market

Finally, the fourth factor analyzes the "effect of the use upon the potential market for or value of the copyrighted work," 17 U.S.C. § 107(4), and is considered the "single most important element of fair use," <u>Harper & Row</u>, 471 U.S. at 566. The Court must consider: (1) "the degree of market harm caused by the alleged infringer's actions"; and (2) "whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market for the original." <u>Gregory</u>, 689 F.3d at 64 (quoting <u>Campbell</u>, 510 U.S. at 590) (internal quotation marks omitted).

The only market information in the amended complaint is Vil's allegation that the intended market for the Program was potential donors to FATEM, an organization concerned with the technical and economic advancement of Mirebalais. <u>See</u> Am. Compl. ¶¶ 9–10, 15. The Defendants identify information that is lacking from the complaint that would be key to considering the effects of the Defendants' conduct taken by itself and the market effects if others were engaged in the same activity such as: (1) the "Plaintiff does not define the market for an educational program," (2) whether "any competition for providing educational assistance in Mirebalais, Haiti exists beyond FATEM itself," and (3) whether Vil is "a representative of an

organization similar to that of FATEM." D. 35 at 8. However, this underdeveloped record is detrimental to the Defendants' fair use argument at this early stage because there is insufficient information in the amended complaint to establish that there is no harm to the market for the Program. See Campbell, 510 U.S. at 590 (explaining that "[s]ince fair use is an affirmative defense, its proponent would have difficulty carrying the burden of demonstrating fair use without favorable evidence about relevant markets"); Associated Press v. Meltwater U.S. Holdings, Inc., No. 12 CIV. 1087 DLC, 2013 WL 1153979, at *19 (S.D.N.Y. Mar. 21, 2013) (noting that "because fair use is an affirmative defense, it is the defendant's burden to present evidence of relevant markets that is favorable to its defense"). Thus, there is insufficient information in the record for the Court to properly consider this factor. See Campbell, 510 U.S. at 594 (stating that "it is impossible to deal with the fourth factor except by recognizing that a silent record on an important factor bearing on fair use disentitled the proponent of the defense . . . to summary judgment").

e.      Conclusion as to Fair Use

Based upon the allegations in the amended complaint, the Court was only able to adequately consider the first factor, which the Court finds weighs against a finding of fair use. There are insufficient allegations for the Court to consider the second, third and fourth factors adequately at this stage in the litigation. Thus, the Defendants have not met their burden of demonstrating that their use of the Program is fair use under 17 U.S.C. § 107. As a result of the foregoing analysis, the Court DENIES the Defendants' motion to dismiss Vil's copyright infringement claim (Count I).

**B.      Vil's Remaining Claims (Counts II-V)**

The Defendants' motion to dismiss Vil's remaining claims is entirely premised upon the argument that Vil does not possess a valid copyright and that the Defendants' alleged infringement constitutes fair use.  D. 34 at 2; D. 35 at 5.  Because the Court has found that the Defendants have failed to carry their burden of establishing the invalidity of Vil's copyright and fair use, the Court DENIES the Defendants' motion to dismiss Vil's remaining claims (Counts II-V).

**VI.     Poteau's Motion to Dismiss the Amended Complaint**

Although Poteau has moved to dismiss the amended complaint along with the other Defendants, he has also filed a motion to dismiss on a different ground.  Poteau argues that Vil's lawsuit is a prepetition debt that was discharged by the August 28, 2012 discharge order under § 727 of the Bankruptcy Code (the "Code").  D. 37 at 6, D. 30-2.

**A.      Date of the Order for Relief for Purposes of the Discharge Order**

The general rule is that only debts that arose prior to the filing of the bankruptcy petition are eligible for discharge.  See 11 U.S.C. § 727(b).  Section 727 of the Code authorizes a discharge in a Chapter 7 bankruptcy case.  Id. § 727(a).  Subsection (b) of that section provides in relevant part that "a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter."  Id. § 727(b).  For purposes of this general rule, the filing date of the bankruptcy petition and the "date of the order for relief" are synonymous.  Id. § 301 (providing that the "commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter"); In re Schlichtmann, 375 B.R. 41, 96 (Bankr. D. Mass. 2007).  However, "the date of the entry of the order for relief changes when a case is converted from Chapter 13 to Chapter 7."  In re Aboraia

(Aboraia v. USDA Food & Nutrition Serv.), No. 04-04941-BGC-7, 2012 WL 385635, at *15 (Bankr. N.D. Ala. Feb. 6, 2012).   A "debtor may convert a case under [Chapter 13] to a case under chapter 7 of this title at any time."   11 U.S.C. § 1307(a).   Section 348(b) provides: "Unless the court for cause orders otherwise, in section[] . . . 727(b) . . . of this title, 'the order for relief under this chapter' in a chapter to which a case has been converted under section . . . 1307 of this title means the conversion of such case to such chapter."   Id. § 348(b). Accordingly, reading §§ 727(b) and 348(b) together, when a case is converted from a Chapter 13 case to a Chapter 7 case, "the date of the order for relief under this chapter" refers to the date of the conversion of the case to a Chapter 7 case for purposes of determining which debts arose before the date of the order for relief, and thus which debts are prepetition debts entitled to be discharged.   Therefore, all debts that arose before the conversion (except those listed in § 523) are treated as prepetition debts and thus are dischargeable.   See In re Fickling (Fickling v. Flower), 361 F.3d 172, 174 (2d Cir. 2004) (holding in Chapter 11 to Chapter 7 conversion case that because claims for attorneys' fees and expenses were incurred after the filing of the Chapter 11 petition, but pre-conversion, and no exemption applies, such claims were dischargeable under § 727); In re Villanueva, No. 08-20646, 2009 WL 2928496, at *3 (Bankr. D. Md. June 5, 2009) (explaining that pursuant to §§ 348(b) and 727(b), a Chapter 7 discharge "had the effect of discharging all of the Debtor's debts that arose before . . . the date of conversion of that case from Chapter 13 to Chapter 7").

Poteau filed his Chapter 13 bankruptcy case on August 13, 2009.   D. 37 at 2; Chapter 13 Voluntary Petition, In re Poteau, No. 09-17731-FJB (Bankr. D. Mass. Aug. 13, 2009), ECF No.

1.[3]  On May 29, 2012, Poteau converted his Chapter 13 case to a Chapter 7 case pursuant to 11 U.S.C. § 1307.  D. 37 at 3; Order, In re Poteau, No. 09-17731-FJB, (Bankr. D. Mass. May 29, 2012), ECF No. 67.  On August 28, 2012, Poteau was issued a discharge order pursuant to § 727.  D. 37 at 3; D. 37-3.  Therefore, under operation of §§ 727(b) and 348(b) discussed above, when Poteau converted his case to a Chapter 7 case, the date of his order for relief was changed to May 29, 2012 for purposes of his discharge order.

Therefore, the Court must determine whether Vil's claims for copyright infringement, unfair competition and breach of an implied contract and requests for monetary damages and injunctive relief constitute a debt that arose before May 29, 2012 and thus are dischargeable.

### B.     Whether Vil's Claims Constitute a Dischargeable Debt

A "claim" is defined as:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).  The term "claim" is to be given "the broadest available definition." FCC v. NextWave Pers. Commc'n, Inc., 537 U.S. 293, 302 (2003) (quoting Johnson v. Home State Bank, 501 U.S. 78, 83 (1991)) (internal quotation marks omitted).  A "debt" is defined as "liability on a claim."  11 U.S.C. § 101(12).  "The reflexive definitions of 'claim' and 'debt' reveal 'Congress' intent that the[ir] meanings . . . be coextensive.'"  In re Hann (Hann v. Educ.

---

[3] In deciding this motion to dismiss, the Court will consider filings in Poteau's bankruptcy proceeding.  Generally, in deciding a motion to dismiss, a court is limited to the facts alleged in the plaintiff's complaint.  However, a court may also look to matters of public record.  Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000).

Credit Mgmt. Corp.), 476 B.R. 344, 354 (B.A.P. 1st Cir. 2012) (alteration and omission in original) (quoting Pa. Dep't of Pub. Welfare v. Davenport, 495 U.S. 552, 558 (1990)).

Vil's allegations of copyright infringement, unfair competition under § 1125(a) of the Lanham Act and breach of contract squarely fit within the statutory definition of "claim" because, if proven, they would obligate Poteau to pay money damages.  See In re Cont'l Airlines (Air Line Pilots Ass'n v. Cont'l Airlines), 125 F.3d 120, 133 (3d Cir. 1997) (noting that "a right of payment under the bankruptcy code is, essentially, an obligation to pay money").  The fact that Vil seeks both money damages and equitable relief in the form of an injunction does not change this analysis.  Am. Compl. at 7–9.  "Under § 101(5)(B), a right to an equitable remedy, whether or not fixed, disputed, or reduced to judgment, is a 'claim' within the meaning of the Bankruptcy Code, and subject to bankruptcy proceedings, if 'a monetary payment is an alternative for the equitable remedy.'"  Rederford v. U.S. Airways, Inc., 589 F.3d 30, 36 (1st Cir. 2009) (quoting In re Cont'l Airlines, 125 F.3d at 133).

Here, the payment of monetary damages is an alternative to the requested equitable remedies.  Under the Copyright Act, if a court finds the defendant's use unfair, the court "may . . . grant temporary and final injunctions" under § 502(a).  17 U.S.C. § 502(a).  Use of the word "may" in the statutory language contemplates that in some cases courts will withhold permanent injunctive relief and limit the plaintiff to money damages.  See Flexible Lifeline Sys., Inc. v. Precision Lift, Inc., 654 F.3d 989, 994 (9th Cir. 2011) (noting that "injunctive relief to prevent copyright infringement is available as an equitable remedy in the court's discretion").  Granting an injunction under § 1125(a) of the Lanham Act is similarly discretionary and a plaintiff may also be limited to monetary damages.  See 15 U.S.C. § 1116 (a) (granting courts the "power to grant injunctions, according to the principles of equity and upon such terms as the

court may deem reasonable, to . . . prevent a violation under subsection (a) . . . of section 1125 of this title"); id. 1117 (a) (providing that when "a violation under section 1125(a) . . . of this title . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action"). Therefore, although Vil seeks equitable remedies for his copyright infringement and unfair competition claims, an award of monetary damages is a viable alternative to these equitable remedies. Cf. Rederford, 589 F.3d at 37 (noting that "money damages are a disfavored, yet nonetheless alternative, remedy to reinstatement in employment discrimination cases, including those under the [Americans with Disabilities Act ("ADA")]" and thus plaintiff's request for the equitable remedy of reinstatement following wrongful termination was a "claim" for purposes of the Code). Accordingly, Vil's claims are "claims" as defined in § 101 of the Code.

Most courts have followed, although with slight variations, either the "conduct test" or the "pre-petition relationship test," also known as a "narrow conduct theory." In re Grossman's Inc. (Jeld-Wen, Inc. v. Van Brunt), 607 F.3d 114, 122 (3d Cir. 2010); In re Parker (Watson v. Parker), 313 F.3d 1267, 1269 n.1 (10th Cir. 2002) (noting that "the courts embracing a conduct theory are divided as to a basic conduct theory versus a 'narrow conduct theory' (also called the 'Piper test')"). Illustrative of the cases that have adopted the conduct test is Grady v. A.H. Robins Co., Inc., 839 F.2d 198 (4th Cir. 1988), which held that a tort claim or breach of warranty claim arises "when the acts constituting the tort or breach of warranty have occurred," and not when the harm caused by those acts manifested. Id. at 201–03; see also In re Parker, 313 F.3d at 1269 (adopting the "conduct theory, which determines the date of a claim by the date of the

conduct giving rise to the claim").  Under the pre-petition relationship test, a claim arises from a debtor's pre-petition tortuous conduct when there is some pre-petition relationship between the debtor and the claimant.   See In re Piper Aircraft, Corp. (Epstein v. Official Comm. of Unsecured Creditors of Estate of Piper Aircraft Corp.), 58 F.3d 1573, 1577 (11th Cir. 1995) (noting that the prepetition relation test "requires 'some prepetition relationship, such as contact, exposure, impact, or privity, between the debtor's prepetition conduct and the claimant' in order for the claimant to hold a § 101(5) claim" (quoting In re Piper Aircraft Corp., 162 B.R. 619, 627 (1994))); see also Wright v. Corning, 679 F.3d 101, 106 (3d Cir. 2012) (adopting a test that "requires that a claimant be exposed to a debtor's product or conduct pre-petition [and] requires individuals to recognize that, by being exposed to a debtor's product or conduct, they might hold claims even if no damage is then evident"); In re SNTL Corp. (SNTL Corp. v. Centre Ins. Co.), 571 F.3d 826, 839 (9th Cir. 2009) (adopting a similar test called the "fair contemplation" test under which "a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law").

The First Circuit appears to endorse at least the view that a claim arises when the acts giving rise to the debtor's alleged liability occur.  See Rederford, 589 F.3d at 37 (holding that an 2008 ADA suit based upon a termination that occurred prior to the defendant's 2003 bankruptcy was discharged); In re Hemingway Transp., Inc. (Woburn Assocs. v. Kahn), 954 F.2d 1, 8 n.9 (1st Cir. 1992) (collecting cases holding that Congress did not intend the Code's "'claim' criteria to turn on the peculiarities of state law, the timing of a lawsuit, or the claimant's failure to anticipate specific future contingencies"); see also In re M.A.S. Realty Corp., 318 B.R. 234, 237 (Bankr. D. Mass. 2004) (noting that "Section 101(5) expressly included within the purview of claim a cause of action or right to payment that has not yet accrued or become cognizable").

Because the preexisting relationship between Vil and Poteau is not at issue and would meet either test, the Court need not decide which version of the conduct theory to adopt.

As discussed above, Poteau's debts that arose before May 29, 2012, the date of conversion, are dischargeable.  Thus, the Court must determine when the acts giving rise to Vil's claims and Poteau's potential liability — the unauthorized use of the Program — occurred.  Vil alleges that he was frozen out of FATEM in 2009 and the Defendants continued to use his intellectual property after his separation from the organization.  Am. Compl. ¶ 11.  Moreover, Vil filed suit on September 21, 2011.  Therefore, it is clear that the conduct at issue occurred before May 29, 2012, and thus Vil's claims were discharged by the order of discharge entered pursuant to § 727 on August 28, 2012.  Accordingly, the Court GRANTS Poteau's motion to dismiss.

## VII.   Vil's Motion to Dismiss Poteau's Counterclaim

Poteau has filed a counterclaim seeking injunctive relief as well as monetary sanctions against Vil for violating the discharge order granted to him in the bankruptcy proceedings.  Countercl. ¶ 1.  Poteau alleges that Vil's continued pursuit of his claims against him violates § 524 of the Code.  Id. ¶¶ 14–18.  Vil has moved to dismiss the counterclaim on the grounds that a violation of § 524 does not give rise to a private right of action.  D. 31 at 2.

Section 524 of Chapter 11 of the Code provides in relevant part that "[a] discharge . . . operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any such debt as a personal liability of the debtor."  11 U.S.C. § 524(a)(2).  When confronted with the question of whether there exists a private right of action for damages or sanctions under § 524, the First Circuit saw "no reason to jump into the fray with the complex analysis required . . . when a remedy is readily and expressly available through another section of the Bankruptcy Code, namely, § 105(a)."  Bessette v. Avco Fin. Servs., Inc.,

230 F.3d 439, 444 (1st Cir. 2000).  Section 105(a) gives the court the authority to "issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Accordingly, "§ 524 is enforceable through § 105."  Bessette, 230 F.3d at 445. Because a § 524 injunction is a statutory-based remedy, and not "one individually crafted by the bankruptcy judge," there are "few . . . practical reasons for confining contempt proceedings" to the bankruptcy court that issued the discharge order.  Id. at 446.  Therefore, the First Circuit held that a debtor can bring a § 524 enforcement action in the district court, and is not limited to the issuing tribunal.  Id. (reversing the district court's holding that debtor could only bring her claims in the court that issued the original discharge order and remanding for the district court's consideration of § 524 through § 105).[4]  In light of the First Circuit's holding that a debtor may seek enforcement of the statutory injunction set forth in § 524 in district court, the Court DENIES Vil's motion to dismiss and, pursuant to Local Rule 201, refers the counterclaim to the United States Bankruptcy Court for the District of Massachusetts.

## VIII.  Conclusion

For the foregoing reasons, the Court DENIES the Defendants' motion to dismiss, D. 34, but GRANTS Poteau's separate motion to dismiss, D. 36.  The Court also DENIES Vil's motion to dismiss Poteau's counterclaim, D. 31, and refers this matter to the U.S. Bankruptcy Court for this District pursuant to Local Rule 201.

---

[4] The First Circuit also noted that "[o]n remand the district court should determine initially whether, in spite of the District of Rhode Island's standing order adopted under 28 U.S.C. § 157(a) it wishes to, and may appropriately, retain jurisdiction under 28 U.S.C. § 157(d); and if the district court determines that retention is inappropriate, shall refer the entire case to the United States Bankruptcy Court for the District of Rhode Island."  Bessette, 230 F.3d at 447. The District of Massachusetts also has a standing rule requiring that "[p]ursuant to 28 U.S.C. § 157(a), any and all cases arising under Title 11 United States Code and any and all proceedings arising under Title 11 or arising in or related to a case under Title 11 shall be referred to the judges of the bankruptcy court for the District of Massachusetts."  Local Rule 201.

**So ordered.**

/s/ Denise J. Casper
United States District Judge