UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SMITH VIL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JACKY POTEAU F/K/A, A/K/A | ) |
| JACQUES POTEAU, | ) |
| FOUNDATION FOR THE | ) Civil Action No. 11-11622-DJC |
| TECHNOLOGICAL AND ECONOMIC | ) |
| ADVANCEMENT OF | ) |
| MIREBALAIS, INC. (FATEM), | ) |
| RICARDO BONACY TELEMAQUE | ) |
| F/K/A, A/K/A BEAUDELAIRE | ) |
| TELEMAQUE, | ) |
| JOHN ERICK NOEL, and | ) |
| GABRIELLE RENE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM AND ORDER

**CASPER, J.**              March 3, 2015

### I.     Introduction

Plaintiff Smith Vil ("Vil") filed this action against Jacky Poteau f/k/a Jacques Poteau ("Poteau"), Ricardo Bonachy Telemaque f/k/a Beaudelaire Telemaque ("Telemaque"), John Erick Noel, Gabrielle Rene (collectively, the "Individual Defendants") and the Foundation for the Technological and Economic Advancement of Mirebalais, Inc. ("FATEM") (together with the Individual Defendants, the "Defendants") asserting claims for copyright infringement, unfair competition, breach of an implied contract, declaratory judgment and equitable relief. D. 1.

1

Defendants have now moved for summary judgment. D. 90 and 92. For the reasons stated below, the Court ALLOWS the motions.

## II.     Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (citation omitted). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial. Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples Inc., 556 F.3d 20, 25 (1st Cir. 2009) (citation omitted).

## III.     Factual Background

The following facts are as described in the Defendants' statement of material facts, D. 94, and Vil's affidavit in opposition to Defendants' motion for summary judgment, D. 110. Vil did not respond to Defendants' statement of material facts.

In 2006, Vil founded the non-profit organization FATEM and served as its Vice President and a member of its board of directors. D. 94 ¶ 3; D. 107 at 2. FATEM is a 501(c)(3) charitable organization based in Brockton, Massachusetts. D. 94 ¶ 1. Poteau is President and Executive

Director of FATEM. D. 110 ¶ 3. Telemaque is an Associate Executive Director of FATEM. Id. All of the Individual Defendants serve on FATEM's board of directors. Id. On September 9, 2009, Vil was terminated from FATEM, and his involvement with the organization ended. D. 94 ¶¶ 4-5. Vil alleges that the Individual Defendants secretly acted to remove him from FATEM's operations. D. 110 ¶ 7.

On January 21, 2011, after his termination from FATEM, Vil filed for copyright protection with the U.S. Copyright Office for a "learning program" called "Learn to Read and Write is a Right" (the "Program"). D. 94 ¶ 6; D. 110 ¶¶ 4-5. Vil claims to have "created" this Program in 2007 while working at FATEM. D. 110 ¶ 4. He received a copyright from the Register of Copyrights which bore the registration number TXu001703966. D. 94 ¶ 6. Vil describes the materials submitted to the copyright office as a textual description of the Program. Id. ¶ 7. Vil has not, however, produced a copy of these materials. Id.

Vil alleges that Defendants, without authorization, continued to reproduce, display, advertise and distribute Vil's copyrighted materials. D. 110 ¶¶ 7, 21. Vil further alleges that Defendants "continued to use [Vil's] creative works to attract donors," who have contributed over a million dollars to the Program. Id. ¶ 11.

## IV. Procedural History

On September 21, 2011, Vil filed this lawsuit against Defendants. D. 1. Defendants moved to dismiss the action on March 23, 2012. D. 15. On November 28, 2012, the Court granted Defendants' motion to dismiss in part and allowed Vil leave to amend his intellectual property rights claim. D. 25. On January 9, 2013, Vil filed an amended complaint against the Defendants, asserting claims for copyright infringement pursuant to 17 U.S.C. §§ 101 et seq. (Count I), unfair competition in violation of 15 U.S.C. §§ 1117, 1125(a) (Count II), breach of an

implied contract (Count III), declaratory relief (Count IV) and injunctive relief (Count V). D. 29 ¶¶ 17-36.

On January 11, 2013, Poteau filed a counterclaim against Vil seeking injunctive relief and monetary sanctions based on Vil's alleged violation of an injunction and discharge order, pursuant to Section 727 of the Bankruptcy Code, 11 U.S.C. § 101 *et. seq.*, dated August 28, 2012 and entered by the United States Bankruptcy Court for the District of Massachusetts. D. 30. Vil moved to dismiss the counterclaim on January 16, 2013. D. 31. On February 1, 2013, the Defendants collectively filed a motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6), D. 34, and Poteau individually filed a motion to dismiss the claims against him, D. 36. On July 26, 2013, the Court denied the Defendants' motion to dismiss, D. 34, but granted Poteau's separate motion to dismiss, D. 36. D. 41. The Court also denied Vil's motion to dismiss Poteau's counterclaim, D. 31, and referred the matter to the U.S. Bankruptcy Court pursuant to Local Rule 201. D. 41.

The Individual Defendants and FATEM have now filed separate motions for summary judgment. D. 90 and 92. The Court heard argument on Defendants' pending motions and took the matters under advisement. D. 119.

V. **Discussion**

  A. **Vil Has Not Demonstrated a Genuine Issue of Material Fact as to His Copyright Infringement Claim (Count I)**

To establish a valid claim for copyright infringement, Vil must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991). "To show ownership of a valid copyright and thus satisfy the first prong under Feist, a plaintiff must prove that the work as a whole is original and that the plaintiff complied with applicable statutory formalities." CMM

4

Cable Rep, Inc. v. Ocean Coast Props., Inc., 97 F.3d 1504, 1513 (1st Cir. 1996). A showing of actionable copying, the second prong under Feist, requires Vil to prove that Defendants "copied plaintiff's copyrighted work as a factual matter" and that the copying "was so extensive that it rendered the offending and copyrighted works substantially similar." Id. (quoting Lotus Dev. Corp. v. Borland Int'l, Inc., 49 F.3d 807, 813 (1st Cir. 1995)).

Vil alleges that he holds a valid copyright granting him "the exclusive rights and privileges" in the learning program, "Learn to Read and Write is a Right," which he further alleges Defendants infringed because they "reproduced, displayed, advertized, pitched to donors, and distributed" the copyrighted materials without his consent. D. 29 ¶¶ 15, 18. Defendants have moved for summary judgment, D. 90 and 92, arguing that Vil cannot substantiate any of his claims, particularly in light of his failure to produce the allegedly infringed material. D. 91 at 2-3; D. 93 at 3.

   1.   *The Validity of Vil's Copyright*

To begin, Vil must show that his work is original and that he complied with the statutory formalities. CMM Cable Rep, Inc., 97 F.3d at 1513. While "registration is not a condition of copyright protection," 17 U.S.C. § 408(a), "the Copyright Act makes registration a precondition to filing a valid copyright infringement claim under the federal statute." Airframe Sys., Inc. v. L-3 Commc'ns Corp., 658 F.3d 100, 105 (1st Cir. 2011). Vil has produced a certificate of registration from the Register of Copyrights for the Program. D. 94-3 (U.S. Copyright Office catalog entry). The certificate is dated January 21, 2011 and bears the registration number "TXu001703966." Id. "[A] certificate of copyright registration constitutes prima facie evidence of copyrightability and shifts the burden to the defendant to demonstrate why the copyright is not valid." Lotus Dev., 49 F.3d at 813 (emphasis in original) (quoting Bibbero Sys., Inc. v. Colwell

5

Sys., Inc., 893 F.2d 1104, 1106 (9th Cir. 1990)). Because Vil has failed to produce the copyrighted material, Defendants seem to suggest that his claims may fail under the first prong of Feist. D. 91 at 3 (noting that "the textual description of his 'Learn to Read and Write is a Right' Program, Registration No. TXu001703966 . . . is at the center of this Copyright dispute, and because the Plaintiff failed to produce this document, he is unable to prove the essential material elements of his claims"). Since Vil's certificate of registration is *prima facie* evidence of his ownership of a valid copyright, Lotus Dev., 49 F.3d at 813, however, the Court will confine its analysis to whether Vil has satisfied Feist's second prong by demonstrating actionable copying.

### 2. *Actionable Copying*

To prove Defendants copied constituent elements of Vil's original work and, as a result, satisfy the second prong of Feist, Vil must first show that Defendants "copied Plaintiff's copyrighted work as a factual matter." CMM Cable Rep, Inc., 97 F.3d at 1513 (quoting Lotus Dev., 49 F.3d at 813). Second, Vil must show that Defendants' copying "was so extensive that it rendered the offending and copyrighted works substantially similar." Id.

#### a) Actual Copying

Actual copying as a factual matter "is generally established by showing that the defendant had access to the copyrighted work and that the offending and copyrighted articles are substantially similar."[1] Concrete Mach. Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 606 (1st Cir. 1988) (quoting Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp., 672 F.2d 607, 614

---

[1]The degree of similarity necessary to suggest actual copying is sometimes referred to as "substantial similarity," however, the Court notes that it is more precisely referred to as "probative similarity." Johnson v. Gordon, 409 F.3d 12, 18 (1st Cir. 2005). "This requirement of probative similarity is somewhat akin to, but different than, the requirement of substantial similarity that emerges at the second step in the progression." Id.

(7th Cir.) (internal quotation marks omitted). At this first step, summary judgment "is appropriate only when a rational factfinder, correctly applying the pertinent legal standards, would be compelled to conclude that no substantial similarity exists between the copyrighted work and the allegedly infringing work." Johnson, 409 F.3d at 18 (citing O'Neill v. Dell Publ'g Co., 630 F.2d 685, 687 (1st Cir. 1980)).

Here, Vil alleges that he "created" the "Learn to Read and Write is a Right" program for FATEM while serving as a board member and as the Vice President of the organization, D. 29 ¶¶ 9-10, and Defendants do not dispute that they worked with Vil on a learning program.[2] Despite extensive discovery in this case, however, Vil has failed to produce his allegedly infringed work.[3] See e.g., D. 87. The only evidence of Vil's alleged original expression is his deposition testimony, D. 94-1, and his answers to Defendants' interrogatories, D. 94-4, 94-5, 94-6, 94-7. Without production of his copyrighted work, the Court cannot say that Defendants even had access to the material that Vil actually copyrighted and that Vil now seeks to protect,

---

[2] The Court notes, for example, a September 12, 2008 email from Vil to the board of directors in which Vil explained that "the Learn to Read and Write program has been in existence for close to 2 years now" without a formal written proposal and attached a proposed draft, encouraging the board to "share with me your views with respect with what could be changed/ added to make it better." D. 84-6 at 1.

[3] This particular issue should not come as a surprise to Vil, as production of the copyrighted text was the subject of two separate motions to compel, D. 61 and D. 80. On June 23, 2014, the Court heard the parties on Defendants' first motion to compel. D. 61. At the time, Vil had not produced documents pertinent to the allegations, including the allegedly infringed program. After discussion with the parties, the Court ordered Vil to "produce and respond to the outstanding discovery request" by July 11, 2014. D. 74. On July 24, 2014, the Defendants filed a second motion to compel, D. 80, arguing that a number of documents, including the "Learn to Read and Write Is a Right" program, had still not been produced. In response, Vil stated that he had not been able to locate a copy of the program text, but that he had contacted the Copyright Office to obtain a copy. D. 84 at 9. The Court then gave Vil until September 23, 2014 to produce responsive documents, including the text of the program filed with the Copyright Office. D. 87. At hearing on these motions on October 30, 2014, however, Vil had still not produced a copy of the copyrighted text.

especially when Vil filed for copyright protection for his Program over sixteen months after his relationship with the Defendants ended. See D. 94 ¶¶ 4-6. Moreover, without production of the allegedly infringed material, the Court cannot determine that a sufficient degree of similarity exists between Vil's copyrighted material and the allegedly infringing work to establish actual copying. As such, Vil's infringement claim fails at the first step of the actionable copying analysis.

### b) Substantial Similarity

Even assuming that Vil's infringement claim survived the first step of the actionable copying analysis, Vil's claim would nevertheless fail at "the second step in the progression." Johnson, 409 F.3d at 18. Here, the Court must consider whether Defendants' copying "was so extensive that it rendered the offending and copyrighted works substantially similar." CMM Cable Rep, Inc., 97 F.3d at 1513 (citation omitted). Vil bears the burden of establishing substantial similarity between Defendants' work and his own. Situation Mgmt. Sys., Inc. v. ASP. Consulting LLC, 560 F.3d 53, 58 (1st Cir. 2009). "Substantial similarity exists if a reasonable, ordinary observer, upon examination of the two works, would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression." Id. (internal quotation marks omitted) (quoting T-Peg, Inc. v. Vt. Timber Works, Inc., 459 F.3d 97, 108 (1st Cir. 2006)). The "ordinary observer" must "identify[] the aspects of the plaintiff's work that are protected by copyright" and "compare[] the protected elements of the plaintiff's work as a whole against the defendant's work." Id. at 58-59 (citation omitted). "However, before the foregoing comparison can take place, the plaintiff must necessarily establish the content of the copyrighted work that [he] contends was infringed." Airframe Sys., Inc.., 658 F.3d at 106. Therefore, to survive summary judgment, Vil must, at a minimum, establish the content of his copyrighted

work. Id.

It is not disputed that Vil secured a certificate of registration from the U.S. Copyright Office for a "learning program" called "Learn to Read and Write is a Right." D. 29 ¶¶ 10, 18; D. 91 at 4. Vil has described this program as "a text providing ways to help kids – disadvantaged kids with tuitions, with school supplies, and to build schools." D. 94-1 at 12. As noted above, however, Vil has not produced the textual description of the Program that he filed with the U.S. Copyright Office and which is the crux of his claims. At his deposition, when asked to describe the document he filed, Vil stated that it was a "Word document," not containing any photographs, drawings or diagrams, D. 94-1 at 9, that he "authored it as a program" and that it was "creative authorship which [he] wrote." Id. at 11. Upon further questioning, Vil testified that the document was not: (1) a literary work; (2) a musical or dramatic work; (3) a pantomime or choreographic work; (4) a pictorial, graphical, or sculptural work; (5) a motion picture or audiovisual work; (6) a sound recording; or (7) an architectural work. Id. at 11-12; see also 17 U.S.C. § 102. When asked to clarify the element of creative expression contained in the text, Vil explained that "it's something that required some intellectual thinking to come up with the whole process and to write about the program, and that's my creative work." Id. at 13. Without more, the Court cannot determine the exact contours of Vil's program, which, as a threshold matter, prevents the Court from conducting substantial similarity analysis. Nevertheless, the Court will address whether the two learning programs, as described, demonstrate a genuine issue of material fact that Defendants unlawfully appropriated Vil's copyrighted work.

Defendants argue that Vil cannot show the requisite level of originality to support a valid copyright. D. 91 at 12. Originality is "a prerequisite for copyright protection." Feist, 499 U.S. at 351. As the term is used in copyright, originality "means only that the work was

independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." Id. at 345. This is a low threshold. Magic Mktg., Inc., 634 F. Supp. at 771. Nevertheless, "[t]here is a narrow class of cases where even admittedly independent efforts may be deemed too trivial or insignificant to support copyright protection." Id. (quoting 1 Nimmer on Copyright § 2.01[B] at 2–13). As such, "fragmentary words and phrases," "forms of expression dictated solely by functional considerations" and "clichéd language and expressions communicating an idea which may only be conveyed in a more or less stereotyped manner" do not warrant copyright protection. Id. at 771-72 (quotation marks and citations omitted).

In his deposition, Vil described the Program as "an educational program" designed to "help students who cannot purchase books on their own, cannot pay tuitions, cannot have school supplies." D. 94-1 at 11. Defendants have also promoted tuition assistance programs called, variously, "Learn to Read and Write" and "Learn to Read and Write is a Right."[4] D. 94-1 at 14; D. 94-8 at 2; D. 94-9 at 1. When pressed to describe what distinguishes his Program from other educational and learning programs, including Defendants' programs, Vil offered little specificity. D. 94-1 at 13. Indeed, Vil admitted that he "[didn't] remember what [he] submitted" to the copyright office but stated that the Program was his "idea," id. at 12, and that "the whole

---

[4] In his deposition, Vil seemed to suggest that the name "Learn to Read and Write is a Right" is subject to copyright protection. D. 94-1 at 13 (claiming that "[i]t's the name itself is creative"). However, titles are typically not subject to copyright protection. See e.g., Arvelo v. Am. Int'l Ins. Co., No. 95-cv-1366, slip op. at 1 (1st Cir. Sept. 21, 1995) (explaining that "[i]t is a basic proposition of copyright law that mere words and short phrases, even if they occur in a copyrighted work, do not themselves enjoy protection against copying"); see also CMM Cable Rep, Inc., 97 F.3d at 1519 (noting that "[i]t is axiomatic that copyright law denies protection to 'fragmentary words and phrases' . . . on the grounds that these materials do not exhibit the minimal level of creativity necessary to warrant copyright protection") (collecting cases); 37 C.F.R. § 202.1 ("The following are examples of works not subject to copyright and applications for registration of such works cannot be entertained: (a) Words and short phrases such as names, titles, and slogans . . .").

process" was "creative," id. at 13.  The Court agrees with Defendants that, without more, the Court cannot distinguish the original elements of Vil's Program from unprotected "clichéd language" or "fragmentary words and phrases," Magic Mktg., Inc., 634 F. Supp. at 771-72, and cannot compare Vil's original expression to Defendants' allegedly infringing work to determine whether substantial similarity exists between the two programs.

Moreover, Vil cannot show infringement, because without production of his written original expression, he cannot establish that the Program is anything more than a process or an idea that does not qualify for copyright protection.  See 17 U.S.C. § 102(b) (explaining that "[i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work"); Concrete Mach. Co., 843 F.2d at 606 (emphasis in original) (citations omitted) (noting that the substantial similarity analysis "refers only to the expression of the artist's concept, not the underlying idea itself; mere identity of ideas expressed by two works is not substantial similarity giving rise to an infringement action"); Matthews v. Freedman, 157 F.3d 25, 27 (1st Cir. 1998) (noting that "copyright protects the original expressions of ideas but not the ideas expressed").  Indeed, the prohibition against copyrighting a process or an idea is a codification of "[t]he most fundamental axiom of copyright law [] that '[n]o author may copyright his ideas or the facts he narrates." Feist, 499 U.S. at 344-45 (quoting Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 556 (1985)).  Descriptions of a process are copyrightable, Situation Mgmt. Sys., Inc., 560 F.3d at 61, however, to the extent that Vil's Program only describes a method for helping "disadvantaged kids with tuitions, with school supplies and to build schools," D. 94-1 at 12. Defendants are free to build upon Vil's ideas as long as they do not appropriate Vil's original

11

expression. Situation Mgmt. Sys., Inc., 560 F.3d at 61-62 (emphasis in original) (concluding that "[t]he fact that [the plaintiff's] works describe processes or systems does not make their expression noncopyrightable" and thus, the plaintiff's "creative choices in describing those processes and systems. . . are subject to copyright protection").

In his deposition, Vil pointed to two documents to show that the Defendants have infringed his Program. First, Vil referred to a 2009 FATEM Facebook post that he claims describes the "Learn to Read and Write program as it started back in 2007."[5] D. 94-1 at 12. The Facebook post refers to a "tuition assistance" program titled "Learn to Read & Write is a Right," D. 94-8 at 2, that is designed to "enable economically disadvantaged children to receive notebooks, pens, pencils, erasers, pencil sharpeners." D. 94-9 at 1. The post "seek[s] funding for [the] 'Learn to Read & Write is a Right' program with the objective of helping disadvantaged children in the Mirebalais school district (Haiti)" Id. Second, Vil referred to a FATEM project profile describing a fundraising program geared toward assisting children obtain tuition, school supplies and food. D. 94-1 at 14. The project profile, which was used by FATEM after Vil filed for copyright protection, also seeks donations for a project providing scholarships and meals to children. D. 94-11 at 1. The profile explains that contributions "will enable economically disadvantaged children to receive tuition assistance, notebooks, pens, pencils, erasers, pencil sharpeners, backpacks, books" through FATEM's "Learning to Read & Write (LTRW) program." Id. at 2 (internal quotation marks omitted).

Although Vil relies on these documents to show infringement, when pressed he could not identify any specific language in those descriptions as his creative expression. D. 94-1 at 15.

---

[5]In his deposition Vil testified that, by making this Facebook post, the Defendants infringed Vil's copyright, D. 94-1 at 14, however, the Court notes that this post was made after Vil was terminated from the organization but over a year before he registered for copyright protection.

Rather, when asked what elements of the project profile infringed on his work, Vil testified only that "[t]he same ideas and words and text that is used [in the project profile] are being used, changed, turnaround, that [he] created," id., and that "FATEM uses a form" of Vil's Program to solicit donors, id. at 16. Absent additional evidence of Vil's original expression, an ordinary observer could not conclude that the Defendants "unlawfully appropriated the plaintiff's protectable expression." Situation Mgmt. Sys., Inc., 560 F.3d at 58 (citation omitted).

At base, this is a case where, despite extensive discovery, neither the Defendants nor the Court has received a copy of the copyrighted work, and, by extension, cannot conduct the substantial similarity analysis. See Unistrut Corp. v. Power, 280 F.2d 18, 23 (1st Cir. 1960) (dismissing "for want of proof" copyright infringement claims where plaintiff claimed infringement of a 1942 catalog that it had registered with the copyright office but only produced an unregistered 1943 version, which was clearly shown to have been pirated, because the plaintiff had not offered proof that the infringed material was contained in the 1942 edition). Accordingly, Vil has not established a genuine issue of material fact as to whether Defendants actually copied constituent elements of his original work and cannot succeed on his copyright infringement claim.

### B. Vil's Remaining Claims (Counts II-V)

Defendants' motion for summary judgment as to Vil's remaining claims is premised upon the argument that Vil does not possess a valid copyright. D. 91 at 18-20; D. 93 at 14-16. Specifically, Defendants argue that Vil's remaining claims are preempted by the Copyright Act, 17 U.S.C. § 301(a), and are therefore subject to dismissal. D. 91 at 18; see also 17 U.S.C. § 301(a) (noting that "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . are governed exclusively by this title"); Steele v.

Turner Broad. Sys., Inc., 607 F. Supp. 2d 258, 263 (D. Mass. 2009) (citation and internal quotation marks omitted) (noting that the Copyright Act preempts state law claims where "1) the work involved falls within the subject matter of copyright and 2) the state law claim incorporates no extra element that is qualitatively different from the copyright claim").

### 1. Vil's Unfair Competition Claim (Count II)

In addition to his copyright claim, Vil alleges unfair competition pursuant to the Lanham Act, 15 U.S.C. § 1125(a). D. 29 at 5. Vil alleges that "[a]s a result of [Defendants'] false and misleading designation, it is likely that the public who happens to browse the internet for the organization of FATEM that the Plaintiff founded and elsewhere will be confused about the source and origination of FATEM and its 'Learn to Read and Write is a Right.'" D. 29 ¶ 22. The Lanham Act protects trademarks and prohibits unfair competition that could cause confusion with respect to the "origin, sponsorship, or approval" of goods or services. 15 U.S.C. § 1125(a)(1)(A). Here, Vil has alleged his unfair competition claim "[a]s a direct and proximate result of Defendant's copyright infringement," D. 29 ¶ 23, and has presented no evidence to support an unfair competition claim that differs from the evidence proffered in support of his copyright infringement claim. However, "[c]opyright infringement by itself does not amount to a misrepresentation or false designation of origin to establish a claim under Section 43(a) of the [Lanham] Act" and "[w]here a plaintiff's Lanham Act claim merely alleges that the defendant made unauthorized use of a copyrighted work, the Lanham Act claim will be dismissed as duplicative of the copyright claim." Mitchell Int'l, Inc. v. Fraticelli, No. 03-cv-1031-GAG/BJM, 2007 WL 4197583, at *12 (D.P.R. Nov. 26, 2007) (citations omitted). As such, Vil's Lanham Act "is duplicative of the copyright claim and should be dismissed." Jalbert v. Grautski, 554 F. Supp. 2d 57, 74 (D. Mass. 2008) (collecting cases); see also Dastar Corp. v. Twentieth Century

14

Fox Film Corp., 539 U.S. 23, 33-38 (2003) (noting that the Lanham Act does not protect a person's creative talent, which instead falls within the domain of copyright law). Accordingly, the Court agrees with Defendants that Vil's unfair competition claim is without merit.

### 2. *Vil's Breach of Contract Claim (Count III)*

Vil also alleges breach of an implied contract.[6] D. 29 at 6. At the hearing, Vil conceded that "[t]here was no actual contract," 10/30/2014 Draft Transcript, but nevertheless argues the Defendants "understood and agreed that [Vil's] works and ideas could be used only if they paid [him] for its reasonable value" and that Defendants "have reproduced, displayed, and distributed [Vil's] creative works" without proper compensation. D. 29 ¶¶ 26-27. As such, Vil's claim will rise and fall on the existence of an implied contract.

Under Massachusetts law, to show an implied contract Vil must allege: (1) that he "conferred a measurable benefit upon [Defendants];" (2) "that the [D]efendant[s] accepted the services with the expectation of compensating [Vil];" and (3) "that [Vil] provided the services with the reasonable expectation of receiving compensation from the [D]efendant[s]." Bolen v. Paragon Plastics, Inc., 747 F. Supp. 103, 106-07 (D. Mass. 1990) (citations omitted). As discussed above, Vil has not shown that Defendants used his copyrighted work. As a result, Vil has not shown that he conferred any measureable benefit on Defendants. Furthermore, Vil stated in his deposition that he never talked with board members about ownership rights to the program. D. 94-1 at 18. Specifically, Vil testified that he could not recall any discussion or conversations

---

[6]While it appears that the First Circuit has not addressed the issue, courts in other circuits have held that breach of contract claims such as this are not preempted by the Copyright Act. See Wrench LLC v. Taco Bell Corp., 256 F.3d 446, 456 (6th Cir. 2001) (noting that "[i]t is not the use of the work alone but the failure to pay for it that violates the contract and gives rise to the right to recover damages"); Acorn Structures, Inc. v. Swantz, 846 F.2d 923, 926 (4th Cir. 1988). The Court need not reach this issue, however, because Vil has not pointed to specific, admissible facts to rebut that there is no genuine issue of material fact as to the existence of an implied contract.

that he had with any of the board members regarding ownership rights to the Program. Id. Vil has likewise proffered no evidence showing that he "provided the services with the reasonable expectation of receiving compensation from the [D]efendant[s]." Bolen, 747 F. Supp. at 107. Accordingly, Vil has not rebutted with specific, admissible evidence Defendants' showing that there is no genuine issue of material fact as to his breach of contract claim.

       *3.*      *Declaratory and Injunctive Relief (Counts IV and V)*

Finally, Vil seeks a declaration that Defendants infringed Vil's copyright. D. 29 at 6. Given the Court's conclusion that Vil has not rebutted Defendants' showing that there is no genuine issue of material fact as to his copyright infringement claims, Vil's request for declaratory relief likewise fails. See Tyler v. Michaels Stores, Inc., 840 F. Supp. 2d 438, 452 (D. Mass. 2012) (noting that "dismissal of the underlying claims requires dismissal of the claim for declaratory relief as well"). Accordingly, as Vil has not succeeded on the merits of his claims, Vil's request for injunctive relief is denied. New Comm Wireless Serv. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002) (noting that likelihood of success on the merits is the "sine qua non" of the permanent injunctive relief inquiry).

**VI.**    **Conclusion**

For the foregoing reasons, Defendants' motions for summary judgment, D. 90 and 92, are ALLOWED.

**So ordered.**

                                          /s/ Denise J. Casper
                                          United States District Judge